UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLYDE GLENN PEREZ                           CIVIL ACTION

VERSUS                                      NO.  10-2073

SHERIFF OF TANGIPAHOA PARISH ET AL.         SECTION "N" (2)


## REPORT AND RECOMMENDATION

Plaintiff, Clyde Glenn Perez, is a convicted prisoner currently incarcerated in the Catahoula Correctional Center.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Tangipahoa Parish Sheriff Daniel Edwards, the Tangipahoa Parish Medical Department, Nurse/Medic Sean Sweeney and Dr. Arthur Manteger [sp.] [actually Mauterer].   Perez alleges that, while incarcerated in the Tangipahoa Parish Jail, he was denied adequate medical care and discriminated against because of a disability.  He seeks monetary damages in the amount of $100,000.00 and injunctive relief.  Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On November 2, 2010, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Brooke Burrescia, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Perez testified that he was then incarcerated in the Nelson Coleman Correctional Center in St. Charles Parish, Louisiana, having pled guilty to conspiracy to buy and sell cocaine in March 2009 in this court.  He said he had not yet been sentenced.

He confirmed that the claims he makes in this case arise from his incarceration in the Tangipahoa Parish Jail from November 2008 until May 2009, when he was transferred to the Nelson Coleman Correctional Center in St. Charles Parish for medical reasons, pursuant to the order of the presiding district judge in his criminal case in this court.  He clarified that, during his six months in the Tangipahoa Parish Jail, he was a pretrial detainee for part of the time and a convicted inmate for the remainder, as to the cocaine charges.  However, he also testified that his probation on an unrelated prior state charge of driving while intoxicated had already been revoked at the time of his federal drug charge, so that he was also imprisoned on the state charge for which he had been convicted at the time he was in the Tangipahoa Parish Jail.

Perez alleged that he did not receive adequate medical care at the Tangipahoa Parish Jail.  He stated that he had received a copy of the medical records that I previously ordered, Record Doc. Nos. 5, 18, but that all of his records were not included.  He stated that at least one or two pages were missing from the medical records filed with the court and that the records he received are not entirely accurate because he never saw a doctor

"the whole time" he was at Tangipahoa.  He testified that any reference to him seeing a doctor while incarcerated in Tangipahoa is incorrect.  However, he confirmed that he did receive the medications reflected in the medical records, including Lipitor, Parafon Forte,[1] Lotensin and Zoloft,[2] while in the Tangipahoa Jail.  He stated that he never saw Dr. Mauterer, whose signature apparently appears on the prescriptions for these medications.

Plaintiff stated that he is 51 years old.  He described his various medical conditions and history as including a "C-spine surgery" in December 2001, seven years before the subject incarceration. He stated that he is not currently confined to a wheelchair, but before the surgery in 2001 he was paralyzed on his right side due to a vertebral "core compression."  He said that the surgery restored his feeling.  He testified that he can walk and has not needed a wheelchair since the surgery.

Perez said the Parafon Forte he received in prison was supposed to be for pain related to his spinal condition, but he complained that he did not know what the medication is and that it never worked to address his pain.  He said he was taking Lortab

---

[1]Parafon Forte is a brand name for chlorzoxazone, a "skeletal muscle relaxant" that "depresses multi-synaptic pathways in the spinal cord" and is used for "relief of muscle spasm in musculoskeletal conditions." http://www.medical-dictionary.thefreedictionary.com (11/2/10).

[2]Zoloft (generic name: sertraline hydrochloride) "is an antidepressant medication known as a selective serotonin reuptake inhibitor (SSRI).  It is used to treat major depression, obsessive-compulsive disorder, panic disorder, post-traumatic stress disorder, . . . and social anxiety disorder."  PDRhealth, http://www.pdrhealth.com/drugs/rx/rx-mono.aspx?contentFileName=Zol1503.html&contentName=Zoloft &contentId=873.

for this pain before his incarceration, but jail officials changed his Lortab prescription to Parafon Forte.  He stated that he receives Lipitor to address his cholesterol problems, Lotensin for high blood pressure and Zoloft for depression.  He confirmed that he was given these medications throughout his incarceration in Tangipahoa.  Perez said he had been taking Klonopin for anxiety, "but they just totally cut me off" from Klonopin after he arrived in the Tangipahoa Parish Jail.  He stated that he had also been taking a muscle relaxer before his incarceration, but it was discontinued in the jail.

Perez testified that he was given cold remedies from time to time at the jail.  He stated that when he had a cold, he would see defendant Nurse Sean Sweeney, and Sweeney would give him cough syrup, antihistamine and amoxycillin.  He said Sweeney is "supposedly a nurse" at the Tangipahoa Parish Jail.  He stated that he saw Sweeney "maybe three, four times" during his incarceration there, including once to be screened for a tooth pull, and that he was taken out of the jail to see a dentist for that in December 2008.  He alleged that Nurse Sweeney was the only medical person of any kind he ever saw at the jail.  He said he was never seen by any doctor, except the dentist, while in the Tangipahoa Jail.

Perez said he needed to see a doctor at the jail "because I had some very severe back problems . . . and he (Sweeney) really didn't understand what I had." He contrasted

4

the treatment he has received while in St. Charles Parish, where he has been given MRI's and other continuing treatment.

Perez confirmed the notation in his Tangipahoa Jail medical records that he has been diagnosed with hepatitis C. He stated that this condition causes him abdominal pain and occasional weakness and swelling. He complained that he had received no medication or other treatment for this condition while at the Tangipahoa Jail. He acknowledged the two statements from Dr. Mauterer that appear in the medical records concerning this condition. Those references are found in (1) a fax dated March 24, 2009 to Judge Fallon of this court, stating: "Hepatitis C is only treated symptomatically. An experimental medication is supplied to certain hospitals from pharmaceutical companies by 'donation only' and is not available to persons incarcerated. General candidates are picked by committee among general public," and (2) an undated note attached to an April 1, 2009 fax to Judge Fallon from Nurse Sweeney stating, "Clyde Perez has been and still is on medication for hypertension, hyperlipidemia, and muscle spasms since incarcerated at [Tangipahoa]. 'Controlled substances' not generally allowed since they have 'value' in the jail. Prescription for 'liv. Hep. C' not available at [Tangipahoa]." Record Doc. No. 18 (Responses to Judge Fallon's orders in United States v. Perez, Crim. No. 08-231 (E.D. La.)).

Perez complained that the statement in the medical records that incarcerated persons cannot receive the experimental hepatitis treatment is false because "when I was in Hunt Correctional Center, I was treated for it." He stated that he is not receiving this treatment at his current place of incarceration, but that his "viral loads" are being monitored by a doctor. He said that because of the lack of treatment for hepatitis C at Tangipahoa, he had suffered pain in his abdomen, back and side in an area and of a type different from the pain from his old spinal injuries. Perez acknowledged that he had not received medication for pain caused by hepatitis C before his incarceration and that the internist currently monitoring him has not prescribed anything for that condition. He reiterated that his basic complaint in this case is that he did not receive attention from a doctor for his chronic spinal and hepatitis C conditions while at Tangipahoa Parish Jail.

Perez also complained that his medical records were improperly exposed to access by an inmate who worked as Nurse Sweeney's helper in the jail. Asked what injuries he suffered as a result of this exposure, he said, "actually none, I guess."

Perez also alleged that defendants violated the Americans With Disabilities Act ("ADA") because he had been found to be fully disabled and was receiving Social Security benefits before his incarceration based on his spinal cord injuries and hepatitis C. He said he is able to walk and is not confined to a wheelchair or required to wear braces on his back or legs, although he experiences some difficulty walking from

time to time.  He said he had a cane before his incarceration, but it was taken from him and "lost" when he was arrested, and "I just did without since then."

After the hearing, I ordered and received plaintiff's medical records from the Coleman and Hunt prison facilities, Record Doc. Nos. 23 and 27, where he has also recently been incarcerated.  The Hunt medical records indicate that, while incarcerated there in 2002, Perez participated in an intensive hepatitis monitoring program called HCV Quantasure Plus.[3]

On cross-examination, plaintiff stressed that the principal document missing from his Tangipahoa medical records was a form request for medical service that he submitted for anti-anxiety medication, to which Sweeney responded, "join the rest of the world, we're all anxious, so be it."  He explained that he had been transferred from state custody to a jail in Baton Rouge for a few days and then transferred back to the Tangipahoa Jail. He said he had been given Klonopin for anxiety at a state facility before his transfer to Tangipahoa, at which time he had not received Klonopin for about a month.  He stated that his prescription for Klonopin had not been restored upon his transfer to Nelson Coleman Correctional Center in St. Charles Parish.  He said his Zoloft dosage had been increased to deal with anxiety, but he complained "it doesn't really help."  Perez stated

---

[3]This is a trademark name for a hepatitis C blood testing series performed by LabCorp.  Quantitation of HCV RNA by TaqMan® PCR: HCV QUANTASURETM PLUS (Laboratory Corporation of America 2002), http://www.labcorp.com/pdf/HCV_QuantaSure_Plus_LabFacets_1285.pdf.

that he had been taking Interferon and ribovivin (sp.?)[4] for his hepatitis C while incarcerated in Hunt Correctional Center.

Perez denied again that he had ever been seen by Dr. Mauterer while at the Tangipahoa Jail.  He denied that he wanted narcotics in jail and said that he only wanted something that would work, like the Neurontin, Altram and Elavil he was being given in the St. Charles Parish facility.  He said he had requested all three of these medications in Tangipahoa Jail from Sweeney, but Sweeney's attitude was that "he's gonna give me what he thinks I need and not what I want."  He said Parafon Forte was prescribed to him for pain in Tangipahoa, but he does not know who prescribed it and he said it gave him no relief.

## ANALYSIS

### I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th

---

[4]This is probably a reference to ribonucleic acid administered as part of the HCV Quantasure Plus test mentioned, for example, in the June 17, 2002 medical records from Hunt Correctional Center.  Record Doc. No. 27.

Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25  (1992)), and may consider and rely upon documents as additional evidence, as

long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section

1915(d) standard is not."  <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a cognizable claim under the broadest reading,[5] either that his constitutional rights or any disability statute was violated.

## II.  <u>MEDICAL CARE</u>

Perez complains that he received inadequate medical care for his spinal and hepatitis C conditions while in the Tangipahoa jail.  Perez may have been a pretrial detainee for part of the time and a convicted prisoner at other times about which he complains.

Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  <u>Bell v. Wolfish</u>,  441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835

---

[5]Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  The

inquiry was "whether the denial of medical care . . . was objectively reasonable in light

of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on

punishment of pretrial detainees."  Pfannstiel v. City of Marion, 918 F.2d 1178, 1186

(5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d

449, 455 (5th Cir. 1992).

> In Hare, however, the Fifth Circuit held:
>
> (1) that the State owes the same duty under the Due Process Clause and the
> Eighth Amendment to provide both pretrial detainees and convicted
> inmates with basic human needs, including medical care and protection
> from harm, during their confinement; and (2) that a state jail official's
> liability for episodic acts or omissions cannot attach unless the official had
> subjective knowledge of a substantial risk of serious harm to a pretrial
> detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable

relationship" test to be applicable, the pretrial detainee must be able to show that a prison

official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

existence of an identifiable intended condition or practice" or that the "official's acts or

omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice."  Id.

at 645.  If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission, and the deliberate indifference standard enunciated in

Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas County, 591

F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51,

53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th

Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted

prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate

medical care only if he demonstrates that there has been "deliberate indifference to

serious medical needs" by prison officials or other state actors. Only deliberate

indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the

conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id.

at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976).

"Deliberate indifference" means that a prison official is liable "only if he knows

that the inmates face a substantial risk of serious harm and disregards that risk by failing

to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825,  847 (1994).

An inmate must satisfy two requirements to demonstrate that a prison official has

violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively,

'sufficiently serious'; a prison official's act or omission must result in the denial of the

minimal civilized measure of life's necessities."  Id. at 834 (quotation omitted).

13

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997). The deliberate indifference standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (additional citations omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In this case, nothing more than episodic acts or omissions have been alleged, and the Estelle standard applies.

Perez's allegations negate any inference that defendants acted with deliberate indifference to serious medical needs.  Initially, it cannot be concluded with certainty that the conditions Perez described, principally back pain from an old spinal injury and chronic hepatitis C without any serious symptoms, presented a serious medical need that posed a substantial risk of harm during his incarceration at OPP.  See Lusk v. Dallas County Sheriff's Dep't, No. 3:00-CV-0662L, 2002 WL 31757706, at *4 (N.D. Tex. Nov. 29, 2002) (herniated disc and degenerative spinal disease not serious medical needs); Nelson v. Rodas, No. 01CIV7887RCCAJP, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (back spasms and pain not a serious medical need); Solomon v. Moore, No. 97 Civ. 0201(KTD), 2000 WL 385521, at *2-3 (S.D.N.Y. Apr. 14, 2000) (when plaintiff was able to walk and function normally despite neck, back and groin pains, he had no serious medical needs); cf. Baker v. Brantley County, 832 F. Supp. 346, 352 (S.D. Ga. 1993), aff'd, 19 F.3d 37 (11th Cir. 1994) (pneumonia is a serious medical need, but no deliberate indifference existed when plaintiff was examined by physician and received prescription medication).  Perez's testimony did not identify any serious risks of harm or any actual harm resulting from the alleged delays in treatment, and they do not rise to the level of serious medical needs for purposes of constitutional analysis.

Even assuming, without concluding, for present purposes that plaintiff's medical problems were serious, Perez has alleged facts, confirmed by his testimony and his

medical records, that negate any conceivable inference of deliberate indifference by Tangipahoa jail officials. Plaintiff's complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical attention for the conditions about which he complains while incarcerated in the jail. He saw a nurse concerning his conditions on several occasions during his six-month stay at Tangipahoa. Even accepting as true plaintiff's testimony that he never saw Dr. Mauterer personally, it is clear from the medical records, including Dr. Mauterer's written communications with Judge Fallon of this court, that Dr. Mauterer monitored and assessed plaintiff's conditions, exercising his own medical judgment. Perez was prescribed and acknowledged that he received various medications, including Lipitor, Parafon Forte, Lotensin and Zoloft. While he did not participate in any special hepatitis C program of the type he received while incarcerated in a different prison facility in 2002 and 2003, Dr. Mauterer explained that situation in response to this court's inquiry in a manner indicating the exercise of professional judgment, in that Perez was then asymptomatic and the special program was not available at the Tangipahoa Jail.

Under these circumstances, it cannot be inferred that jail personnel were deliberately indifferent to plaintiff's conditions in the constitutional sense. While it is clear from his allegations and testimony that Perez is not satisfied with the quality or effectiveness of his medical care at the Tangipahoa Jail, it is equally clear that the

medical care provided was constitutionally adequate. Certainly, no finding of deliberate indifference to serious medical needs can be made based on this record. See Still v. Crawford, 155 F. App'x 241, 242 (8th Cir. 2005) (prisoner with hepatitis C failed to show deliberate indifference when he saw doctor almost monthly, received hepatitis B immunization, was tested for hepatitis A and was referred to specialist, who evaluated his need for interferon testing); Randall v. Behrns, 141 F. App'x 307, 309 (5th Cir. 2005) (prisoner with hepatitis B who was evaluated by doctors, received liver biopsy and was seen by specialists failed to show deliberate indifference); Price v. Kurtz, No. 95-CV-1304, 1996 WL 122624, at *3 (E.D. Pa. Mar. 19, 1996) (regular monitoring of hepatitis-infected plaintiff's blood negates allegation of deliberate indifference and failure to treat).

Although Perez may be alleging delay in receiving medical care and he has expressed dissatisfaction with the extent, type or effectiveness of his overall treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such

showing has been made on the current record.

Mere delay in receiving care is not in and of itself a constitutional violation.

Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson

v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay,

plaintiff at a minimum must show deliberate indifference to serious medical needs.

Wilson, 501 U.S. at 298.  No such showing can be made in this case in light of the

extensive medical care Perez has received during his pre-trial incarceration.

Contentions like Perez's that amount to a mere disagreement with the speed,

quality or extent of medical treatment or even negligence do not give rise to a Section

1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the

level of a constitutional violation, malpractice or negligent care does not."  Stewart v.

Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted); see id. (active treatment

of prisoner's serious medical condition that ultimately resulted in death does not

constitute the requisite deliberate indifference, even if treatment was negligently

administered); see Randall, 141 F. App'x at 309 (allegations that plaintiff with

hepatitis C should have been examined sooner and received different treatment reflect

mere negligence and disagreement with treatment decisions); see also Estelle, 429 U.S.

at 107 (The "question whether an X-ray or additional diagnostic techniques or forms of

treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice . . . ."); Corte v. Schaffer, 24 F.3d 237, 1994 WL 242793, at *1 (5th Cir. 1994) (Contrary to plaintiff's allegation that he had received "no treatment" because he believed he needed a referral to a gastroenterologist, he failed to demonstrate deliberate indifference when he was seen by prison medical personnel more than 100 times and received numerous gastrointestinal tests and a chest x-ray, with all results being within a normal range.); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (Prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (Plaintiff, who was 18 months post-surgical implantation of hip prosthesis, who complained of pain in his hip and who was ultimately diagnosed with broken wires in the prosthesis, failed to state a claim for deliberate indifference when he was seen by medical personnel "numerous times for problems relating to his hip.").

Therefore, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983.

III.   <u>MEDICAL RECORDS PRIVACY RIGHTS</u>

Perez complained briefly during his testimony that his medical records were improperly exposed to access by an inmate who worked as Nurse Sweeney's helper in the jail, although he conceded that he suffered no actual harm as a result.  A prisoner has no clearly recognized constitutional right in the privacy of his medical records, particularly not in the Fifth Circuit.  Although a small number of federal courts have recognized such a right in extremely limited circumstances, others have declined to recognize such a right and instead have stated that "whether inmates have a constitutional right to privacy in their medical records is far from settled.  Although [the Second and Third Circuit] courts of appeals have recognized such a right, the Court of Appeals for the Seventh Circuit has not."  <u>Cole v. Litscher</u>, No. 04-C-116-C, 2005 WL 1075515, at *5 (W.D. Wis. May 6, 2005) (Crabb, J.) (citing <u>Massey v. Helman</u>, 196 F.3d 727, 742 n.8 (7th Cir. 1999) ("'Whether prisoners have any privacy rights in their prison medical records and treatment appears to be an open question.'") (internal citation omitted); <u>Doe v. Delie</u>, 257 F.3d 309, 317 (3d Cir. 2001); <u>Powell v. Schriver</u>, 175 F.3d 107, 112 (2d Cir. 1999)).

In <u>Cole</u>, for example, the district court rejected the existence of such a right in the factual circumstances described in that case.  The court stated that it was

> inclined to view any disclosure of information about plaintiff's high blood
> pressure as too innocuous to amount to a violation of any constitutional

20

right to privacy plaintiff might have. . . .  Even [if] plaintiff had shown that his file contained sensitive information, he has not submitted evidence showing that the security officers who were given plaintiff's medical history opened the envelope it came in and read through it.  This appears to be pure speculation on plaintiff's part.

Id.

By contrast, the Second and Third Circuits have recognized such a right only in the very limited context of either HIV-positive or transsexual status, in part because of "the social stigma, harassment, and discrimination that can result from public knowledge of one's affliction with AIDS," Doe v. Se. Pa. Transp. Auth. (SEPTA), 72 F.3d 1133, 1140 (3d Cir. 1995), and "[t]he excrutiatingly [sic] private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter." Powell, 175 F.3d at 111.  "It is beyond question that information about one's HIV-positive status is information of the most personal kind and that an individual has an interest in protecting against the dissemination of such information." Doe v. Delie, 257 F.3d at 317 (citing Doe v. SEPTA, 72 F.3d at 1140; Powell, 175 F.3d at 112).

In the instant case, Perez has no extremely sensitive medical condition, such as HIV, that might entitle him to the very limited constitutional protection recognized in two circuits, but not the Fifth Circuit.  Other courts have recognized that prisoners do not have a constitutional privacy interest in other types of medical conditions, which, even though potentially embarrassing, are not of the "[t]he excrutiatingly [sic] private and

21

intimate nature" of HIV and transsexualism.  See, e.g., Rodriguez v. Ames, 287 F. Supp.

2d 213, 220 (W.D.N.Y. 2003) (prisoner had no privacy interest in diagnosis of "proctitis,

a nontoxic inflammation of the mucose tissue of the rectum, and internal hemorrhoids");

Webb v. Goldstein, 117 F. Supp. 2d 289, 298 (S.D.N.Y. 2000) (no right to privacy in

information concerning treatment for various genital conditions).  Thus, there is no

clearly established constitutional right to privacy in a prisoner's medical records, and

particularly not in the circumstances described by Perez.

The only other possible basis on which Perez may base a federal claim in this case

is the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L.

No. 104-191, §§261-264, 110 Stat. 1936 (1996).  HIPAA is the federal statute which

generally provides for confidentiality of medical records.

However, HIPAA provides no express or implied private cause of action for its

violation, and the Fifth Circuit and other courts have consistently rejected any argument

to the contrary, as have the legal commentators who have examined the statute.  Acara

v. Banks, 470 F.3d 569, 571 (5th Cir. 2006);  Cassidy v. Nicolo, No. 03-CV-6603-CJS,

2005 WL 3334523, at *5-6 (W.D.N.Y. Dec. 7, 2005) (citing Univ. of Colo. Hosp. Auth.

v. Denver Publ. Co., 340 F. Supp. 2d 1142, 1145 (D. Colo. 2004); Brock v. Provident

Am. Ins. Co., 144 F. Supp. 2d 652, 657 (N.D. Tex. 2001); O'Donnell v. Blue Cross Blue

Shield, 173 F. Supp. 2d 1176, 1180 (D. Wyo. 2001); Wright v. Combined Ins. Co. of

Am., 959 F. Supp. 356, 363 (N.D. Miss. 1997); Means v. Individual. Life & Accident
Ins. Co., 963 F. Supp. 1131, 1135 (M.D. Ala. 1997); A. Craig Eddy, A Critical Analysis
of Health and Humans Services' Proposed Health Privacy Regulations in Light of the
Health Insurance Privacy and Accountability Act of 1996, 9 Annals Health L. 1, 32
(2000); Francoise Gilbert, Emerging Issues in Global Aids Policy; Preserving Privacy,
25 Whittier L. Rev. 273, 289 (2003); Joy L. Pritts, Altered States: State Health Privacy
Laws and the Impact of the Federal Health Privacy Rule, 2 Yale J. Health Pol'y L. &
Ethics, 325, 343 (2002); Frederick Y. Yu, Medical Information Privacy under HIPAA:
A Practical Guide, Colorado Lawyer, May 2003, at 22)).

"In the absence of any argument on plaintiff's behalf that HIPAA authorizes a
private right of action, the court declines to find one sue sponte."  Cassidy, 2005 WL
3334523, at *6.

IV.    PLAINTIFF'S ADA CLAIM

A.    No Individual Liability Under the ADA

Perez has also asserted that he was the victim of disability discrimination at the
Tangipahoa Parish Jail.  The Supreme Court in Pa. Dep't of Corrections v. Yeskey, 524
U.S. 206, 209-10 (1998), recognized that state prisoners may bring claims against their
jailors for disability discrimination under Title II of the ADA, which prohibits
discrimination by public entities.  Thus, "no qualified individual with a disability shall,

by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

Because the term "public entity" in Title II does not include individuals, individual defendants cannot be held personally liable for violations of Title II of the ADA.  Walker v. Snyder, 213 F.3d 344, 347 (7th Cir. 2000), abrogated on other grounds by Bd. of Trustees v. Garrett, 531 U.S. 356, 374 n.9 (2001), as stated in Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 906, 912 (7th Cir. 2003); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999); Mitchell v. Mass. Dep't of Correction, 190 F. Supp. 2d 204, 211(D. Mass. 2002); Washington v. Davis, No. 01-1863, 2001 WL 1287125, at *3 (E.D. La. Oct. 23, 2001) (Barbier, J.); Sims v. Tester, No. 3:00CV0863D, 2001 WL 627600, at *1 (N.D. Tex. Feb. 13, 2001) (Fitzwater, J.); Berthelot v. Stadler, No. 99-2009, 2000 WL 1568224, at *1 (E.D. La. Oct. 19, 2000) (McNamara, C.J.).

Thus, to whatever extent, if any, that the individual defendants are being sued in their individual capacities, plaintiff's ADA claims against them must be dismissed.

B.    Plaintiff's Official Capacity ADA Claim

When a pro se plaintiff does not specify in his complaint whether a defendant is named in his or her official or individual capacity, it is generally presumed by operation

24

of law that the defendant is named in his or her official capacity.  Egerdahl v. Hibbing

Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995); Soper v. Hoben, 195 F.3d 845, 853 (6th

Cir. 1999); Wells v. Brown, 891 F.2d 591, 593 (6th Cir. 1989); but see Biggs v.

Meadows, 66 F.3d 56 (4th Cir. 1995) (examining complaint to determine capacity in

which defendant is sued); Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991)

(presuming that defendant is sued in both capacities if complaint is silent).

The real party in interest in an official capacity suit is the government entity.

Henrietta D. v. Bloomberg, 331 F.3d 261, 289 (2d Cir. 2003) (citing Hafer v. Melo, 502

U.S. 21, 25 (1991)).  As to any official capacity claim that plaintiff may be asserting

against the individual defendants under the ADA, plaintiff's written submissions, as

expanded upon by his testimony, wholly fail to establish two threshold requirements for

assertion of an ADA claim.

First, Perez is not "disabled" within the meaning of the Act.  The statute defines

disability as "(A) a physical or mental impairment that substantially limits one or more

of the major life activities of [a qualified] individual; (B) a record of such an impairment;

or (C) being regarded as having such impairment."  Id. § 12102(2).  Perez's testimony,

including that he is in no way confined to a wheelchair, that he requires no use of any

special device, and that he is not otherwise restricted in his movements and ability to

ambulate, completely fails to allege substantial physical impairments in any major life activity.

Second, a plaintiff proceeding under Title II must "show that:  (1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity which provides the service, program or activity is a public entity."  Burgess v. Goord, No. 98 Civ. 2077(SAS), 1999 WL 33458, at *7 (S.D.N.Y. Jan. 26, 1999) (emphasis in original) (quotation and citation omitted); accord Moore v. Prison Health Servs., Inc., 24 F. Supp. 2d 1164, 1167 (D. Kan. 1998) (citing Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998)), aff'd, No. 98-3310, 1999 WL 1079848 (10th Cir. Dec. 1, 1999); King v. Edgar, No. 96 C 4137, 1996 WL 705256, at *5 (N.D. Ill. Dec. 4, 1996).  No such allegations have been established in plaintiff's testimony or his written submissions.

Thus, on these first two levels, Perez cannot state an ADA claim.  His claim must therefore be dismissed.  In addition, however, he cannot as a matter of law assert an ADA claim under these circumstances for the following reasons.

First, Title II does not require a prison to make reasonable accommodations for inmates with disabilities, Owens v. O'Dea, 149 F.3d 1184, 1998 WL 344063, at *3 (6th Cir. 1998), or create a right for a disabled inmate to demand that the prison implement

a specific type of service, program, or activity that is not already available.  Garrett v. Angelone, 940 F. Supp. 933, 942 (W.D. Va. 1996), aff'd, 107 F.3d 865 (4th Cir. 1997). Second, "[a] plaintiff asserting a private cause of action for violations of the ADA . . . may only recover compensatory damages upon a showing of intentional discrimination." Delano-Pyle v. Victoria County, 302 F.3d 567, 575 (5th Cir. 2002) (citing Carter v. Orleans Parish Pub. Sch., 725 F.2d 261, 264 (5th Cir. 1984)).  "Acts of negligence do not come within the ambit of the ADA."  Norman v. TDCJ-ID, No. 6:06cv403, 2007 WL 3037129, at *5 (E.D. Tex. Oct. 18, 2007) (citing Foley v. City of Lafayette, 359 F.3d 925, 931 (7th Cir. 2004)).  Thus, plaintiff must allege that he "is being excluded from participation in, being denied the benefits of, or being subjected to discrimination . . . solely because of h[is] disability."  Dillery v. City of Sandusky, 398 F.3d 562, 567 (6th Cir. 2005) (quotation omitted).  No such allegation has sufficiently been made in this case.

Because the binding case law discussed above prohibits the assertion by Perez of an ADA claim against these defendants, he has failed to state a claim under the ADA, and this claim must also be dismissed.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[6]

New Orleans, Louisiana, this ____28th____ day of February, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[6]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.